UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARJORIE PAYNE,

   Plaintiff,

                Case No. 11-10769

v.

                Honorable Patrick J. Duggan

LOCAL LODGE 698, RAYMOND
BRIGGS, and MARK WARD,

   Defendants,

v.

JON WINTERHALTER,

   Third-Party Defendant.

_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on March 6, 2012.

PRESENT:  THE HONORABLE PATRICK J. DUGGAN
       U.S. DISTRICT COURT JUDGE

Marjorie Payne ("Plaintiff") filed this action to recover compensation under an

employment contract. The defendants are the International Association of Machinists and

Aerospace Workers Local Lodge 698 ("Lodge 698") and two officials of Lodge 698's

parent organization, Raymond Briggs and Mark Ward. Briggs has filed a counterclaim

against Plaintiff and a third-party complaint against Jon Winterhalter, the former Directing

Business Representative of the Local Lodge that employed Plaintiff. Before the Court are

three motions for summary judgment: (1) Defendants' motion for summary judgment as to
Plaintiff's claims; (2) Briggs' motion for summary judgment as to his counterclaim against
Plaintiff and his third-party complaint against Winterhalter; and (3) Winterhalter's motion
for summary judgment as to Briggs' third-party complaint. Briggs has also filed a motion
to strike Winterhalter's jury demand. On January 30, 2012, the Court notified the parties
that it was dispensing with oral argument concerning these motions pursuant to Eastern
District of Michigan Local Rule 7.1(f)(2). For the reasons stated below, the Court grants
Defendants' motion for summary judgment, grants in part Briggs' motion for summary
judgment, and denies Winterhalter's motion for summary judgment. The Court denies as
moot Briggs' motion to strike Winterhalter's jury demand.

## I. Factual and Procedural Background

The International Association of Machinists and Aerospace Workers ("IAM") is a
union which charters lodges to represent various classes of employees. At the top level of
the union's hierarchy is a Grand Lodge, which in turn charters District Lodges and Local
Lodges. Each District Lodge provides services to several Local Lodges, and each Local
Lodge is comprised of multiple bargaining units. A bargaining unit typically represents
employees of a specific trade. District and Local Lodges employ business representatives
to administer the collective bargaining agreements of each bargaining unit.

Winterhalter was the directing business representative of IAM Local Lodge PM2848
("Lodge 2848"), which was incorporated in Michigan. In February 2006, the secretary
employed by Lodge 2848 left her job to take a position at a District Lodge. Winterhalter
wished to obtain a replacement. Lodge 2848's secretarial positions were represented by a

union, the Office and Professional Employees International Union Local 42 ("OPEIU").

Winterhalter contacted Theresa Kandt, the OPEIU's bargaining representative, to obtain a

list of candidates.  Before receiving a response, however, Winterhalter learned through a

friend that Plaintiff had previously worked for another IAM lodge and was familiar with

the software used to run the union's monthly reports.  Winterhalter met with Plaintiff on

February 18, 2006.  At this meeting, he informed Plaintiff that her employment would be

covered by a collective bargaining agreement.  Winterhalter Dep. 36:1-37:1, Aug. 31,

2011.  Plaintiff was at first reluctant to accept the position, apparently because of her past

experience working for the IAM.  Winterhalter offered Plaintiff deferred compensation

bonuses, a higher pay rate, and a severance package worth one year's pay and benefits.

Winterhalter Dep. 121:1-122:15.  He indicated that Plaintiff would only become entitled to

severance if she worked for Lodge 2848 for six months and if she was terminated for a

reason other than cause.  Winterhalter Dep. 121:21-122:4.

Plaintiff accepted, and began working the following Monday, February 20, 2006.

According to Winterhalter, Plaintiff became a member of the OPEIU bargaining unit on

that date, Winterhalter Dep. 45:20-23, and Plaintiff was covered by the OPEIU collective

bargaining agreement from that day forward.  Winterhalter Dep. 29:11-23.  The OPEIU

became Plaintiff's exclusive bargaining representative, Winterhalter Dep. 29:11-16, and

she began paying dues to the OPEIU.  Payne Dep. 92:5-8, Sep. 1, 2011.

Sometime during March 2006, Winterhalter memorialized in writing the agreement

he had made with Plaintiff.  He backdated it to February 20, 2006 and Plaintiff signed it.

A few days later, after deciding that the severance agreement "looked like a contract

between me and [Plaintiff]," Winterhalter drafted a second version "between the local lodge and [Plaintiff]."[1]  Winterhalter Dep. 38:7-20.  Winterhalter subsequently contacted Kandt to inform her of modifications to the pension and insurance terms of the collective bargaining agreement.  Winterhalter Dep. 47:6-23.  He did not mention the severance agreement.  Winterhalter Dep. 47:12-23.

Winterhalter and Kandt allegedly met during March 2006 for Kandt to sign off on the pension and insurance modifications to the collective bargaining agreement.[2]  At that meeting, Winterhalter allegedly told Kandt that he had also promised Plaintiff "certain benefits," although he did not refer to a "severance package" or go into detail concerning the nature of these benefits.  Winterhalter Dep. 50:8-20.  Kandt allegedly said that she did not care, "as long as it doesn't change the contract."  Winterhalter Dep. 50:5-6.  It is undisputed that the severance agreement was never presented to Kandt for her signature.  Winterhalter soon notified the Lodge 2848 executive board of the pension and insurance modifications to the OPEIU collective bargaining agreement.  He did not mention the severance agreement, however, because he believed it would "start a firestorm with our members that would result in what would probably be viewed as an attack on the Grand Lodge."[3]  Winterhalter Dep. 97:10-15.

In 2006, 2007, and 2008, Winterhalter sought the Local Lodge executive board's

---

[1] It is not clear whether Plaintiff ever signed the revised draft of the written agreement.

[2] Plaintiff and Winterhalter both assert that this meeting occurred, while Kandt denies it.

[3] Apparently this might have been viewed as an attack on the Grand Lodge because some Grand Lodge officials had allegedly facilitated the previous secretary's move from Lodge 2848 to a District Lodge, creating the need for Lodge 2848 to obtain a replacement.

approval to pay Plaintiff's deferred compensation bonuses.  These bonuses were paid, although one board member objected in 2008.  At some point, a District Lodge official suggested that Winterhalter contact IAM General Vice President Lynn Tucker about these bonuses.  Winterhalter contacted Tucker and stated that he had an enforceable contract with Plaintiff to pay these bonuses.  Tucker responded that if he had a contract with Plaintiff, the expenditure was appropriate and did not require authorization from the Grand Lodge.

By late 2009, Lodge 2848's membership had dwindled to approximately 300.  The Grand Lodge assigned an auditor to review the Lodge's finances, and Winterhalter believed that the Lodge was going to be placed under "supervision."[4]  Lodge 2848 was at that time affiliated with District Lodge 60.  In December 2009, Winterhalter told Mark Ward, the Directing Business Representative of District Lodge 60, about the severance agreement with Plaintiff.  Ward notified Kandt, who confirmed that she had neither negotiated nor signed the severance agreement.  Ward Aff. ¶ 5.  Ward also notified the Grand Lodge, and Lynn Tucker responded in a letter to Winterhalter indicating that he believed the severance agreement violated the IAM constitution and Lodge 2848's bylaws.  Winterhalter Dep. 54:17-25.

Ward addressed Lodge 2848's executive board at a meeting on March 2, 2010, and advised the board that the severance agreement with Plaintiff would not be honored, as it was null and void.  Payne Dep. 27:5-10.  Plaintiff was in attendance at this meeting, and

_____

[4] Under the IAM constitution, the term "supervision" is synonymous with trusteeship.

she contacted Kandt about this matter.  Kandt again denied having approved the severance agreement.

In June 2010, Briggs was appointed "supervisor" over Lodge 2848.  He determined that Lodge 2848 had failed to conduct meetings in accordance with quorum requirements for the last two years.  Briggs Aff. ¶ 8.  Briggs also noted that Lodge 2848 was operating at a financial deficit.  He therefore recommended to the Grand Lodge that Lodge 2848 be "merged out of existence."  *Id.*  Briggs attempted to contact Kandt on August 30, 2010 to bargain over the effects of the Lodge's closure, but received no response.  On September 30, 2010, Briggs notified Kandt via letter that the Lodge was withdrawing recognition of the OPEIU bargaining unit.  *Id.* ¶ 10.  Lodge 2848 closed at the end of that same day.  Plaintiff remained an employee of Lodge 2848 up until it closed.

Upon closure, Lodge 2848's bargaining units were divided among six other Local Lodges.  Defendant Lodge 698 received 11 of the 22 bargaining units.  According to Stuart Proctor, Lodge 698's president, the members transferred from Lodge 2848 now compose about 15% of Lodge 698's membership.  Proctor Aff. ¶ 5.  These individuals became members of Lodge 698 and are subject to Lodge 698's bylaws.  *Id.*  Proctor claims that Lodge 698 did not assume the OPEIU collective bargaining agreement, and does not employ any former Lodge 2848 employees.  *Id.* ¶ 7.

Although Lodge 2848 closed on September 30, 2010, Plaintiff reported for work on her next scheduled workday, October 4, 2010.  Briggs was at Lodge 2848's office winding up its affairs.  He and Ward met with Plaintiff that day, and explained that Lodge 2848 no longer existed and her employment was terminated.  Briggs Aff. ¶ 12.  Plaintiff demanded

the severance promised under her agreement with Winterhalter.  *Id.* ¶ 13.  Briggs refused, indicating that the IAM would not pay this severance.  Over the following month, Lodge 2848's affairs were settled, and the assets of the Lodge were apparently transferred to the Grand Lodge pursuant to the IAM constitution.

On January 31, 2011, Payne filed this suit in Wayne County Circuit Court, seeking to recover compensation under the severance agreement.  Her Complaint asserts a claim for breach of contract (Count I) against Lodge 698.  Plaintiff also brings claims of tortious interference with a contractual relationship (Count II), concert of action (Count III), and civil conspiracy (Count IV) against Briggs and Ward.  Defendants removed the suit to this Court, and Briggs filed a counterclaim against Plaintiff, alleging that the severance agreement was invalid and that Plaintiff had received compensation in excess of that provided for by the collective bargaining agreement.  Briggs also filed a third-party claim against Winterhalter, alleging that Winterhalter violated his fiduciary duties to Lodge 2848 by entering into a side agreement with Plaintiff.  Briggs seeks a declaration that the severance contract is void, recovery of the excess compensation paid to Plaintiff, and reimbursement of attorneys' fees and costs related to the defense of this action.  Briggs requests that Winterhalter indemnify Defendants in the event that Defendants are found liable to Plaintiff.

## II. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement

7

to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323, 106 S. Ct. at 2553. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255, 106 S. Ct. at 2513. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

### III. Plaintiff's Claims Against Defendants

Defendants contend that they are entitled to summary judgment with respect to Plaintiff's claims because: (1) the OPEIU collective bargaining agreement preempts

8

Plaintiff's claims; (2) Plaintiff failed to plead a breach of the duty of fair representation;

(3) Plaintiff's suit is untimely; and (4) Lodge 698 cannot be held liable under Plaintiff's

contract with Lodge 2848.  The Court shall address these arguments in turn.

## A. Preemption

    Defendants assert that the OPEIU collective bargaining agreement preempts

Plaintiff's claims.  Plaintiff contends that her employment was not covered by a collective

bargaining agreement.  Winterhalter testified that when he initially met with Plaintiff, he

informed her that her employment would be covered by a collective bargaining agreement.

Winterhalter Dep. 36:1-37:1.  Winterhalter's letter to Kandt shortly after hiring Plaintiff

indicates that during his interview of Plaintiff, they "went through" the OPEIU contract.

Winterhalter Resp. Br. Ex. U at 1.  Winterhalter also testified that Plaintiff became a

member of the OPEIU bargaining unit on the date she began working, Winterhalter Dep.

45:20-23, and that she was covered by the collective bargaining agreement from that day

forward.  Winterhalter Dep. 29:11-23.  The Court also notes that Plaintiff's actions are

inconsistent with her assertion that the collective bargaining agreement did not apply to

her.  Plaintiff alleges that she met with Kandt, the OPEIU bargaining unit representative,

in March 2006, and that Kandt was made aware of Plaintiff's severance agreement.  Pl.'s

Resp. Br. 4.  Plaintiff testified that she contacted Kandt when she learned that Lodge 2848

would not honor the severance agreement.  Payne Dep. 27:5-22.  Plaintiff admits that she

paid dues to the OEPIU.[5]  Payne Dep. 92:5-8.  The evidence before the Court indicates

---

[5] Defendants correctly note that it would have be unlawful for the Lodge to deduct dues
from Plaintiff's pay or for the OPEIU to accept those dues unless a collective bargaining

that Plaintiff's employment was covered by the OPEIU collective bargaining agreement.

Plaintiff contends that under the "single employee unit" rule, her bargaining unit would not be recognized because she was its only member. Plaintiff is mistaken, as a collective bargaining agreement may be enforced even where there are no longer any employees in the relevant bargaining unit. *Teamsters Local Union No. 89 v. Kroger Co.*, 617 F.3d 899, 906-07 (6th Cir. 2010) (affirming order compelling arbitration of union's grievance against employer). Thus, a collective bargaining agreement is not void simply because it covers only one employee. The agreement remains enforceable unless and until actually repudiated by the employer. *Miner v. Teamsters Local No. 373*, 513 F.3d 854, 863 n.6 (8th Cir. 2008).

Plaintiff relies on *In re Luckenbach Steamship Co.*, 2 N.L.R.B. 181 (N.L.R.B. 1936), however, this decision provides only that the National Labor Relations Board will not certify a union of one employee. *Luckenbach* further states: "This conclusion does not mean that a single employee may not designate a representative to act for him." *Id.* at 193. Thus, a single-employee bargaining unit is not inherently illegal. Plaintiff also points to *Foreign Car Center, Inc.*, 129 N.L.R.B. 319 (N.L.R.B. 1960). This reliance is misplaced, as the decision stated that federal law "does not preclude bargaining with a union on behalf of a single employee, if an employer is willing." *Id.* at 320. Plaintiff relies on cases involving 29 U.S.C. § 158(f), which pertains to pre-hire agreements in the construction industry, but these cases only stand for the proposition that the employer is permitted to

---

agreement was in effect. *Jackson Purchase Rural Elec. Coop. Ass'n v. IBEW*, 646 F.2d 264, 266 (6th Cir. 1981).

terminate such an agreement with a single-employee bargaining unit. *J.W. Peters, Inc. v. Bridge Structural & Reinforcing Ironworkers*, 398 F.3d 967 (7th Cir. 2005); *Laborers Health & Welfare Trust Fund v. Westlake Dev.*, 53 F.3d 979 (9th Cir. 1995). These decisions do not hold that a collective bargaining agreement applying to one employee is necessarily void. Plaintiff also cites *Motion Picture Projectionists v. Fred Corp.*, 845 F. Supp. 1255 (N.D. Ill. 1994). In that case, the employer repudiated the collective bargaining agreement. There is no indication that Lodge 2848 had repudiated its collective bargaining agreement with the OPEIU at the time Plaintiff and Winterhalter negotiated the severance agreement. *Fred Corp.* is therefore inapposite. Plaintiff's brief relies extensively on the analysis of *Local 377, RWDSU, UFCW v. 1864 Tenants Ass'n*, 2007 U.S. Dist. LEXIS 14766 (S.D.N.Y. 2007), but that court concluded that a collective bargaining agreement covering a single employee was an enforceable contract. *Id.* at *40. The Court is not persuaded that Plaintiff's bargaining unit is unrecognizable pursuant to the "single employee unit" rule. The Court accordingly concludes that Plaintiff's employment relationship with Lodge 2848 was governed by the OPEIU collective bargaining agreement.

Defendants assert that because Plaintiff's employment was subject to a collective bargaining agreement, the severance agreement is unenforceable. The Court agrees. "The National Labor Relations Act makes it the duty of the employer to bargain collectively with the chosen representatives of his employees." *Medo Photo Supply Corp. v. NLRB*, 321 U.S. 678, 683, 64 S. Ct. 830, 833 (1944) (citing 29 U.S.C. § 159(a)). "[I]t is a violation of the essential principle of collective bargaining and an infringement of the Act

11

for the employer to disregard the bargaining representative by negotiating with individual employees." *Id.* at 684, 64 S. Ct. at 833. Side agreements are unenforceable even where they were negotiated before the employee obtained a union representative. *J.I. Case Co. v. NLRB*, 321 U.S. 332, 337-39, 64 S. Ct. 576, 580-81 (1944). The collective bargaining agreement here prohibits side agreements unless they are set forth in writing and signed by Lodge 2848 and the OPEIU: "This Agreement sets forth the entire understanding between the parties and shall not be changed, amended, altered, or modified, except by mutual agreement, in writing, between the parties." Kandt Aff. Ex. A, art. 18, § 7. Such method-of-modification clauses have been termed "zipper clauses," and have been enforced by the Sixth Circuit. *See Spero Elec. Corp. v. IBEW, Local Union No. 1377*, 439 F.3d 324, 329 (6th Cir. 2006). No representative of the OEPIU signed the severance agreement between Plaintiff and Winterhalter.[6] The severance agreement is therefore unenforceable. The Court accordingly grants summary judgment for Lodge 698 with respect to Plaintiff's breach of contract claim.

Defendants argue that the collective bargaining agreement also preempts Plaintiff's state law tort claims against Briggs and Ward. Where a collective bargaining agreement governs the employment relationship, "it is beyond question that [an employee] must look to federal labor law for any relief and that his sole remedy, if any, lies not in state law but in the terms of the collective bargaining agreement." *Maushund v. Earl C. Smith, Inc.*, 795

---

[6] Plaintiff argues that Kandt was "made aware" of the severance agreement and "voiced no objection," but the collective bargaining agreement's terms require all modifications to be in writing and signed by Lodge 2848 and the OPEIU.

F.2d 589 (6th Cir. 1986) (citing *NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180, 87 S. Ct. 2001, 2006 (1967)).  Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), "preempts state law claims that are 'substantially dependent on analysis of a collective-bargaining agreement.'"  *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 799 (6th Cir. 1990) (quoting *IBEW v. Hechler*, 481 U.S. 851, 859 n.3, 107 S. Ct. 2161, 2167 n.3 (1987)).  Through her state law tort claims, Plaintiff seeks to enforce the severance agreement.  This agreement is unenforceable pursuant to the terms of the collective bargaining agreement.  The Court concludes that Plaintiff's tort claims are preempted, and therefore grants summary judgment in favor of Briggs and Ward with respect to these claims.

## B. Failure to Plead Breach of Duty of Fair Representation

Defendants argue that because § 301 of the LMRA preempts Plaintiff's claims, she must satisfy the requirements of a claim under this statute, including the requirement that a plaintiff plead the union's breach of its duty of fair representation.  Defendants assert that Plaintiff has failed to plead any facts indicating such a breach.  An employee may assert a claim against her employer under § 301 of the LMRA, *Fox*, 914 F.2d at 799, and such claims are referred to as "hybrid § 301" claims.  "A hybrid § 301 suit implicates the interrelationship among a union member, his union, and his employer."  *Vencl v. Int'l Union of Operating Eng'rs, Local 18*, 137 F.3d 420, 424 (6th Cir. 1998).  To recover, the employee must show that: (1) the employer breached the collective bargaining agreement; and (2) the union breached its duty of fair representation.  *Bagsby v. Lewis Bros.*, 820 F.2d 799, 801 (6th Cir. 1987).  Plaintiff has failed to plead facts tending to establish that the

OPEIU breached its duty of fair representation.  Plaintiff contends that she need not allege

such facts, as her claims do not involve a collective bargaining agreement.  The Court has

concluded otherwise, and finds that Plaintiff's claim therefore fails as a matter of law.

### C. Statute of Limitations

Defendants argue that the relevant statute of limitations also bars Plaintiff's claims.

A hybrid § 301 suit must be brought within six months of when the employee's cause of

action accrues.  *Del Costello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169, 103 S. Ct.

2281, 2293 (1983).  The employee's cause of action accrues when she "knows or should

have known" of the breach of the contract and that the union would not pursue her claim.

*Schoonover v. Consol. Freightways Corp.*, 49 F.3d 219, 221 (6th Cir. 1995).  Plaintiff has

testified that on March 2, 2010, she attended a board meeting at which Ward stated that the

severance agreement with Plaintiff would not be honored.  Payne Dep. 27:5-10.  One week

later, on March 9, 2010, Kandt told Plaintiff that she was unaware of any severance

agreement and that if Kandt's signature was on any written agreement to that effect, it was

a forgery.  Payne Dep. 28:2-23.  This certainly put Plaintiff on notice that the union would

not pursue her claim.  Plaintiff filed this action more than ten months later, on January 31,

2011.  The Court accordingly concludes that her claims must be dismissed as untimely.

### D. Liability of Local Lodge 698

The severance contract is not enforceable, but even if it were, the Court finds no

basis upon which Plaintiff could recover from Lodge 698 for the alleged breach.  The

severance contract was entered into by Winterhalter on behalf of Lodge 2848, and

generally, courts cannot bind a non-party to a contract.  *Abney v. Amgen, Inc.*, 443 F.3d

540, 547 (6th Cir. 2006). Plaintiff asserts that Lodge 698 is liable as a successor-in-interest, Compl. ¶ 33, but she has failed to establish facts sufficient to justify successor liability. The Sixth Circuit has held that under certain circumstances, a new employer can be held to the terms of the prior employer's collective bargaining agreement. *See Wood v. Int'l Bhd. of Teamsters, Local 406*, 807 F.2d 493, 498 (6th Cir. 1986). Successor liability may be imposed where: (1) the new employer is the "alter ego" of the old employer; (2) the new employer expressly or impliedly assumed the contract; or (3) there is "substantial continuity" of business operations between the new employer and the old employer. *Id.* at 498-99.

There is no evidence indicating that Plaintiff was ever employed by Lodge 698. Plaintiff argues that she "was working for Lodge 698" after Lodge 2848 was closed and was paid for doing so. Pl.'s Resp. Br. 17. She testified, however, that she was paid by Lodge 2848 for this work. Payne Dep. 17:10-19. Defendants admit that on October 4, 2010, Plaintiff located some collective bargaining agreements for Briggs and Ward, Defs.' Reply Br. 8 n.7, but there is no evidence indicating that these IAM Grand Lodge officials were acting as agents of Lodge 698. Plaintiff asserts that she was "told to report to work at Local Lodge 698," but has failed to cite to any evidence in the record establishing this. To show a genuine issue of fact, Plaintiff must present evidence upon which a jury could reasonably find in her favor. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

Even if Plaintiff could show that she had been employed by Lodge 698, the evidence here is insufficient to satisfy any of the three conditions set forth in *Wood* for imposing successor liability. Lodge 698 is not the alter ego of Lodge 2848. "An 'alter ego' will be

found only in cases 'involving a mere technical change in the structure or identity of the employing entity, frequently to avoid the effect of the labor laws.'" *Wood*, 807 F.2d at 498 (quoting *Howard Johnson Co. v. Detroit Local Joint Exec. Bd.*, 417 U.S. 249, 259 n.5, 94 S. Ct. 2236, 2242 n.5 (1974)). Lodge 698 existed before Lodge 2848 was dissolved, and Lodge 2848's former members make up only about 15% of Lodge 698's membership. Proctor Aff. ¶¶ 2, 5. After Lodge 2848 was closed, its bargaining units were divided among six other lodges, and none received more than half of the 22 units. The new members are subject to Lodge 698's bylaws. *Id.* at ¶ 5. Plaintiff alleges that money was transferred from Lodge 2848 to Lodge 698 after the closing, but the Court does not believe that this would be sufficient to establish successor liability under an alter ego theory.

Plaintiff asserts, without supporting evidence, that "Lodge 698 had . . . assumed the obligations of [Lodge 2848]." The only evidence in the record with respect to this claim indicates that Lodge 698 did not take over the OPEIU collective bargaining agreement. *Id.* ¶ 7. Plaintiff has failed to point to any evidence indicating otherwise, and has therefore failed to carry her burden in opposing Defendants' motion for summary judgment.

Plaintiff also has failed to set forth facts supporting a "substantial continuity" theory of successor liability. The Sixth Circuit has laid out a number of factors for courts to consider in determining whether "substantial continuity" exists between two unions:

> (1) whether the successor union had notice of the liability; (2) the ability of the predecessor union to provide relief; (3) whether there has been a substantial continuity of the union's operations; (4) whether the successor union uses the same offices or encompasses the same jurisdiction; (5) whether the successor union has absorbed the predecessor's membership; (6) whether the officers of the predecessor union continued in some official capacity in the successor union; (7) whether the wages, terms and conditions of employment

16

> administered by the predecessor, as set forth in the collective bargaining
> agreement, are the same or substantially equivalent to those administered by
> the successor; (8) whether the members continue to pay dues and enjoy the
> same membership rights; and (9) whether the members continue to work at the
> same trade for the same or similar employers.

*Dornan v. Sheet Metal Workers' Int'l Ass'n*, 905 F.2d 909, 914 (6th Cir. 1990). These

factors weigh against a finding of substantial continuity. Lodge 698 was apparently not

notified of the severance contract until the Complaint in this case was served. As noted

above, Lodge 2848's bargaining units were split into six existing Lodges. Lodge 698 does

not use the former Lodge's office space, Proctor Aff. ¶ 2, and applies its own bylaws.

Lodge 698 does not employ any former officers or employees of Lodge 2848. *Id.* ¶ 7. Nor

does it follow the dues structure of Lodge 2848. *Id.* ¶ 6. The Court concludes that no

genuine dispute of fact exists, and Plaintiff has failed to establish grounds for successor

liability. As Lodge 698 was not a party to the severance agreement, it cannot be held

liable on that contract.

### IV. Briggs' Counterclaims Against Plaintiff

In his counterclaim against Plaintiff, Briggs requests a declaration that the severance

agreement was void. As noted above, the Court has concluded that the agreement is

unenforceable. Briggs must be granted summary judgment on this claim.

Briggs also seeks to recover "the overpayment of compensation paid to [Plaintiff] in

excess of the amounts required in her collective bargaining agreement." Answer ¶ 84. In

his motion for summary judgment, Briggs cites a statement in Ward's affidavit indicating

that Plaintiff spent a considerable amount of her working time playing a game on Lodge

2848's computer. He asserts that this conduct violated Plaintiff's duty of loyalty to the

17

Lodge.  The duty of loyalty prohibits, for example, competition against one's employer, or acting as a dual agent without the employer's knowledge.  *Wysong Corp. v. M.I. Indus.*, 412 F. Supp. 2d 612, 624 (E.D. Mich. 2005).  This duty also prohibits an employee from profiting as a result of a transaction undertaken for his employer's benefit.  *In re Hanson*, 225 B.R. 366, 375 (Bankr. W.D. Mich. 1998).  The common thread in the case law seems to be that the employee takes action detrimental to the employer or diverts to his personal use assets or opportunities that, but for the breach, would accrue to the employer.  It is not clear that Plaintiff's conduct satisfies this standard.  An employee's lack of productivity resulting from such activities is not to be condoned, but the Court is unaware of any legal authority holding that unproductive time constitutes a breach of the duty of loyalty. Briggs cites in support of his argument the unpublished per curiam opinion of the Michigan Court of Appeals in *Tooling Manufacturing & Technologies Association v. Tyler*, No. 293987, 2011 Mich. App. LEXIS 2521 (Mich. Ct. App. Dec. 28, 2010).  *Tyler* recognized that under the "faithless agent" or "faithless servant" rule, one who engages in misconduct, fraud, or gross mismanagement forfeits his right to compensation.  *Id.* at *20-21.  *Tyler* involved an insurance agent who appropriated the insurance agency's commissions.  The court concluded that the agent forfeited his right to compensation through this misconduct.  *Id.* at *27.  Plaintiff's actions here are considerably different in character, as there is no indication that she either profited or inflicted harm through her activities.  The Court believes that Plaintiff should be granted summary judgment with

respect to Briggs' claim to recover overcompensation.[7]

## V. Briggs' Third-Party Claims Against Winterhalter

Briggs alleges that Winterhalter violated his fiduciary duties to Lodge 2848 by entering into the severance agreement with Plaintiff. Briggs requests that Winterhalter indemnify Defendants in the event that Defendants are found liable to Plaintiff. This request is moot, as the Court has concluded that Plaintiff's claims against Defendants fail as a matter of law. Defendants do not require indemnification because they are not subject to liability.

Briggs also seeks restitution in the form of the attorney's fees and costs incurred in this action. Briggs asserts that courts have held union fiduciaries personally liable for breach of their duties and have required them to reimburse their unions accordingly. *See Wade v. Teamsters Local 247*, 527 F. Supp. 1169, 1181 (E.D. Mich. 1981); *Farrington v. Benjamin*, 468 F. Supp. 343, 352 (E.D. Mich. 1979). These cases, however, have involved reimbursement for unauthorized expenses. It is undisputed that Plaintiff was not paid the severance she requested; this rationale therefore cannot justify restitution. *Farrington*, *Wade*, and the other decisions cited by Briggs have allowed recovery of attorney's fees in actions under § 501(a), but these cases involve claims brought by union members on the union's behalf. *See Erkins v. Bryan*, 785 F.2d 1538 (11th Cir. 1986); *Brink v. Da Lesio*, 667 F.2d 420 (4th Cir. 1981); *Johnson v. Nelson*, 325 F.2d 646 (8th Cir. 1963). Such

---

[7] Although Plaintiff did not file a motion for summary judgment, the Court is satisfied that Briggs cannot prevail on this counterclaim for the reasons indicated. The Court accordingly grants summary judgment for Plaintiff with respect to this counterclaim.

awards rely on the rationale that "those who directly benefit by litigation must reimburse the successful plaintiff's costs or stand unjustly enriched," *Erkins*, 785 F.2d at 1548, and all union members benefit from a plaintiff's suit to hold a fiduciary accountable for breach of his duty. This reasoning does not apply here, as Winterhalter will not benefit in any way from Briggs' claim against him.[8]

Briggs also raises a second basis for requesting attorney's fees. He argues that these costs are consequential damages from Winterhalter's breach of fiduciary duty, analogous to the costs of defense that are recoverable when an insurer breaches its duty to defend. The Court is not persuaded by this analogy. The case cited by Briggs, *Ziebart Int'l Corp. v. CNA Ins. Cos.*, 78 F.3d 245 (6th Cir. 1996), relies on Michigan case law holding that attorney's fees are included among the consequential damages resulting from an insurer's breach of its duty to defend the insured. *Id.* at 251. In such a case, the insurer's failure to defend is precisely what causes the insured to incur attorney's fees. The connection between Winterhalter's breach of fiduciary duty and Defendants' attorney's fees is, by comparison, more attenuated. The Court is also unaware of any legal authority that would suggest treating Winterhalter as an insurer.

The Court believes that this case is more akin to the familiar scenario in which a defendant prevails with respect to a plaintiff's claims against him. Generally, each party bears its own attorney's fees, absent a statutory exception created by Congress. *Griffin*

---

[8] Briggs has also sought reimbursement of his attorney's fees from Plaintiff, but the same reasoning applies. Plaintiff will not benefit from Briggs' claims against Winterhalter, as Briggs has sought to merely shift liability to the party he believes should properly bear it.

*Indus. v. EPA*, 640 F.3d 682, 685 (6th Cir. 2011).  The Court is unaware of a statutory

exception applying to this case, and sees no need to deviate from the general rule.  The

Court therefore declines to award Briggs attorney's fees.

### VI. Briggs' Motion to Strike Winterhalter's Jury Demand

In response to the Third-Party Complaint, Winterhalter demanded a jury trial.  Briggs

argues that because his action is equitable in nature, there is no right to a trial by jury.  As

noted above, the Court has concluded that Plaintiff is not entitled to relief on her claims

against Defendants, and therefore, indemnification is unnecessary.  The Court has also

concluded that Briggs is not entitled to an award of attorney's fees.  Having disposed of

the claims against Winterhalter, the Court believes that the motion to strike Winterhalter's

jury demand is now moot.

### VII. Conclusion

For the reasons stated above, the Court concludes that Defendants are entitled to

summary judgment with respect to Plaintiff's claims against them.  The severance contract

upon which Plaintiff seeks to recover is unenforceable, and the collective bargaining

agreement preempts Plaintiff's claims.

Briggs is entitled to summary judgment on his counterclaim seeking a declaration

that the severance contract is unenforceable.  The Court concludes, however, that Briggs

cannot recover the alleged overcompensation from Plaintiff.

Briggs' request for indemnity is moot because the Court has granted Defendants

summary judgment with respect to Plaintiff's claims.  The Court further concludes that

Briggs is not entitled to reimbursement of his attorney's fees from either Winterhalter or

21

Plaintiff.

Briggs' motion to strike Winterhalter's jury demand is moot, because the claims against Winterhalter have been resolved.

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment with respect to Plaintiff's claims is **GRANTED**.

**IT IS FURTHER ORDERED** that Briggs' motion for summary judgment with respect to his counterclaim against Plaintiff and his third-party claim against Winterhalter is **GRANTED IN PART**.  The alleged severance contract is declared unenforceable. Plaintiff is granted summary judgment with respect to Briggs' claim to recover alleged overcompensation.

**IT IS FURTHER ORDERED** that Winterhalter's motion for summary judgment is **DENIED**.

**IT IS FURTHER ORDERED** that Briggs' motion to strike Winterhalter's jury demand is **DENIED AS MOOT**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

Joseph P. Ciaramitaro, Jr., Esq.
Robert A. Kuhr, Esq.
Frederick Perillo, Esq.
Kevin J. O'Neill, Esq.
Sara J. Geenen, Esq.
Richard R. Zmijewski, Esq.